Good morning, if it may please the Court. I'm Amitai Schwartz representing the appellant Kevin O'Connell. I would like to reserve two minutes, if I may. You may do so. Just watch the clock, counsel. The – I'm going to address the two shackling issues that are the certified issues, and I'd like to spend about 30 seconds trying to convince the Court to certify the last issue that we briefed. As the Court knows, Mr. O'Connell was shackled throughout his 7-day trial for possessing and selling stolen property. The record or the basis for the shackling is extremely thin. The trial judge really just applied – shackled him as a routine matter. I mean, the judge kind of decided, well, I don't have anything better to do today, so let's pick somebody out of the – out of the hat to shackle. I mean, there was a tremendous record of this guy's disruptive behavior. He attacked everybody, as far as I can tell. Well, that's not what the judge said. The judge's articulated reason, the trial judge's articulated reasons were that there was another case pending with a felony, which happened to be a burglary, that there were some prior assaultive behavior. Isn't that enough, maybe? I mean, that's just a very quick way of describing the bottom of the iceberg, which was huge in your client's case. Well, it was huge only in the sense that there was a habeas corpus petition filed by Mr. O'Connell, and that habeas petition was in the same court file. And in the course of that habeas petition, which is in the appellee's excerpts of the record, the prison staff detailed a whole series of events and a – let's call it a very bad attitude on Mr. O'Connell's part, including a couple of fights. He was also charged, it showed, with spitting at two correctional officers. But there's nothing in the trial court record to show that this judge, the trial judge, actually read that or was relying on it. And secondly, he's – if, as you characterized it, Judge Trott, if he's – the summary of the – let's call them bad acts – was a summary of what was in the correctional officer's report and declaration for the habeas petition, then the trial judge was really just delegating to the correctional officers the decision whether this fellow ought to be shackled. And this Court has said, and I think it's quite clear from the Supreme Court, that it's a judicial function, that shackling is such an extreme measure, it's so foreign to our system of justice, so foreign to our courtrooms, that it can't be delegated to the correctional officers. Roberts, counsel, is there anything in the record which suggests that the jury saw the shackles? During the liability phase. Excuse me? During the liability phase, the guilt phase. I understand. Not that I know of. That there are the – Well, then under 2254 – 2244d, don't we have to assume that the jury did not see any shackles? Well, we don't – I don't know whether you have to assume it, but we certainly have – there's nothing in the record to show that the jury saw it. There was a coat over the back of the chair. But there was never any hearing on this issue. There was never any inquiry as to what the jury saw, what the jury – and there was also – it's not only what the jury saw, Your Honor, because if the only test was what did the jury see, then all sorts of, let's say, unnecessary things could have been going on underneath that coat. That could have affected Mr. O'Connell's relationship with his attorney. Did the State court deal with this issue on appeal? Yes, it did. And how did it handle it? The State court rejected the issue. The State court relied on the correctional officer's report and said that there was no prejudice. Have you read Harrington v. Richter lately? Yes, I have. Where are we? Where are we? I think fair-minded jurists could and should disagree with the jury. But disagreement isn't good enough. Well – I mean, we were told to get out of that game of disagreeing. Well – And the standard is very, very high. I admit. I mean, there's no question that the standard is a high one. But I also believe, and I submit, that what happened here where the record is – the record of the justification is so thin as to why this fellow was – let's call it a bad attitude, but he wasn't dangerous. There wasn't any – there wasn't a shred of evidence showing that he had been a danger in a courtroom, that he had – was about to escape, that he was going to – that he was in any way a threat to security. And so the result, nonetheless, is that he – the trial judge applies what is the most extreme form of restraint. Counsel, I think we understand your argument on that. What about the penalty phase issue? Well, the penalty phase issue is – there we clearly have some prejudice, because the jury's – What is the prejudice? Well, the jury's – Guilt has already been established. The only issue is the penalty. Well, no. The issue was whether or not the three prior strikes had been proved. Right. But it's not – he wasn't – his guilt with respect to the conviction in this case had already been established. It had. And so what's the prejudice? Well, the prejudice is that he – that the judge makes a spectacle out of him when he – when he – the judge tells him to come off the witness stand, and O'Connell can't do it because he's – because he's chained, or he can't do it easily because he's chained, and he has to say, I can't, I've changed my chair. The judge, nonetheless, tells him to come down off the – off the stand and go back to, presumably, the counsel – the counsel table. Well, counsel, didn't the judge ask him, didn't the judge warn him several times not to go into the area of the three strikes, and O'Connell continued to disregard what the judge told him and, in essence, would not shut up? That's – that's what happened. The – but, you know, whether this is the correct sanction for that, the judge had threatened contempt, and he didn't use it. The judge could have cut off the microphone, he didn't do that, and the judge could have excused the jury, and he didn't do that. Instead, he paraded him down with the chains. What was his purpose in testifying? His purpose in testifying? Well, their defense was – well, first off, they have a right to put on a defense, regardless, as to those three strikes. And the defense, as stated in the opening statement and as argued by the lawyer, by O'Connell's lawyer, was that these previous offenses from 1980, 1981, 1982, dating back 16, 17, 18 years, were too – too stale, that they were unreliable. They admitted the existence of the offenses, though. He did. O'Connell did at the liability phase. He did, yes. And so what's the purpose of – of him taking the stand? He's got a right to a defense. I mean – Well, what did he say, other than stuff that he wasn't – was told he shouldn't be talking about? Well, he was – he was trying to get into the facts of those particular – he was trying to show the staleness of the – of the facts to give the jury some flavor for what the – what the offense was. I want to save my last minute, if I may. You certainly may, counsel. And I also want to ask – I'm going to do it in five seconds. I'm going to ask the Court to – if it would certify that last issue, because I think it's – it's actually not only a good issue, but it's – it's – there's some prejudice there. Yeah, we have your briefing on that. Thank you, counsel. We'll hear from the State. Good morning. My name is Pam Critchfield, representing – the respondent. I'm with the California Attorney General's Office. The first thing we would submit is that the Supreme Court's recent decision in Richter v. Harrington, under that decision, Petitioner's burden is that he must demonstrate that fair-minded jurists would agree that the California Court of Appeals' decision  inconsistent with the Supreme Court's decision in Deck v. Missouri, which is the Supreme Court decision that is relevant to shackling. Secondly, the State Appellate Court, in its decision, made a factual finding that the jury did not see the shackles during the trial on the substantive crime. That finding of fact is presumed correct unless it is rebutted by clear and convincing evidence, which has not been – there's been no evidence. That finding was made by the California Court of Appeals? Yes. All right. Yes. How does the Court of Appeals make a finding of fact? Did it hold an evidentiary hearing? Based on the record for the trial court. So it wasn't really a finding. It was just a statement as to the condition of the record. A statement of a finding, yes. But are we – what's the dignity that we have to give to that? Do we have to treat that as a 52244? It's presumed correct. But is it a finding of fact? We would argue, yes, it's a finding of fact. In the trial court, isn't it correct, counsel, that defense counsel did not ask for an instruction about shackling? Correct. And therefore seemed to acknowledge that the jury had not seen the shackles. Correct. And then at the bifurcated trial, the trial on the priors, defense counsel stated that the jury had not seen the shackles. And that's at – well, it's in the excerpts of record – well, actually, the supplemental at 61. And then the only evidence that the jury may have seen or allegedly saw shackles was defendant's statement at the bifurcated trial that when he moved, he thought the jury heard the chains. At that time, the prosecutor said that's absolute fabrication, and there was no evidence at all of that. I mean, no further discussion about that. Defense counsel did not make any statement about that at all. That's kind of telling. The defense attorney didn't even say anything. Right. It was his opportunity at that point to make a record, and he did not do that.  We would argue that the trial judge, there was no judicial misconduct in his ordering a defendant to – ordering Petitioner to return to his seat under the circumstances. I think the Petitioner's reason for testifying was that he wanted to give the backstory on his prior convictions, and he clearly wanted to tell the jury that this was a three year trial. At that point, though, he had already admitted the priors. So there is absolutely no prejudice, even if the court decided – even if the court decided that what the judge did was judicial misconduct. If there are no further questions, I would submit it on the record. No further questions. Thank you, counsel. Thank you. Mr. Schwartz, you have some reserve time. I'll submit it, Your Honor. Very well. The case just argued will be submitted for decision.
judges: Campbell, O'scannlain, Trott